TROUTMAN SANDERS LLP
Hollace T. Cohen, Esq.
Lee W. Stremba, Esq.
Brett D. Goodman, Esq.
The Chrysler Building
405 Lexington Avenue
New York, New York
Telephone: (212) 704-6000
Facsimile: (212) 704-6288

*Attorneys for PT Bank Negara Indonesia (Persero) Tbk*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., et al.<br><br>        Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br>Jointly Administered |
| SECURITIES INVESTOR PROTECTION<br>CORPORATION<br><br>        Plaintiff,<br>v.<br><br>LEHMAN BROTHERS, INC.<br><br>        Defendant. | |
| PT BANK NEGARA INDONESIA (PERSERO) TBK,<br><br>        Plaintiff,<br>v.<br><br>LEHMAN BROTHERS SPECIAL FINANCING, INC.,<br>AND LEHMAN BROTHERS, INC.<br><br>        Defendants. | Adversary No. 09-<br><br>_____ |

## **COMPLAINT**

PT Bank Negara Indonesia (Persero) Tbk ("BNI" or "Plaintiff"), by its undersigned

attorneys, for its verified complaint against and Lehman Brothers Special Financing, Inc.

("LBSF") and Lehman Brothers, Inc. ("LBI", and together with LBSF, collectively the "Defendants"), hereby alleges as follows:

## Nature of the Action

1.      Over the course of a year and a half prior to the shocking collapse of Lehman Brothers Holdings, Inc. ("LBHI"), the parent of LBI and LBSF, Plaintiff had conducted hundreds of foreign currency exchange transactions with LBSF and its affiliates. This action arises from one such foreign currency exchange transaction that took place in September 2008, on the eve of LBHI's bankruptcy filing and shortly before the ensuing insolvency proceedings for LBI and LBSF. On September 16, 2008, following the typical pattern of their well established course of dealings, BNI transmitted GBP 1,000,000 in cash (the "BNI Funds") to LBI, in its capacity as receiving agent for LBSF, in accordance with a foreign currency exchange transaction between BNI and LBSF, which was entered into on September 12, 2008 (the "FX Transaction"). Under the FX transaction, LBSF was required to make a simultaneous transfer to BNI, on the same date, by delivery of 1,765,700 USD. Unfortunately, on this occasion, LBSF failed to make the required simultaneous transfer, and thereafter, despite timely demand by BNI to LBSF on September 18, 2008, LSBF also failed to return the BNI Funds to BNI.

2.      At no time did either LBI or LBSF acquire a legal or equitable interest in the BNI Funds; neither entity, has any right to retain and/or hold the BNI Funds; and each of them has been unjustly enriched by their wrongful failure and refusal to deliver the BNI Funds to their true owner, BNI.

3.      Despite repeated demands from BNI and its counsel, LBI and LBSF have failed to return the BNI Funds delivered by BNI. Accordingly, plaintiff BNI seeks, inter alia, one or more of the following forms of relief: (i) declaration that the BNI Funds have been held by the

Defendants in trust for BNI and must be returned to BNI; (ii) an order granting BNI its reclamation rights under applicable law with respect to the BNI Funds; and (iii) an administrative claim pursuant to applicable provisions of title 11 of the United States Code (the "Bankruptcy Code").

## Jurisdiction and Venue

4.      This adversary proceeding (this "Adversary Proceeding") is brought pursuant to section 105 of the Bankruptcy Code and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

5.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

7.      Venue is proper in this district under 28 U.S.C. § 1409(a).

## The Parties

8.      Plaintiff is a banking corporation established under the laws of Indonesia and majority owned by the government of Indonesia, with its principal place of business in Jakarta, Indonesia.  Plaintiff engages in banking activities, including the purchase and sale of currencies throughout the world.

9.      Defendant LBI was a broker-dealer registered with the United States Securities Exchange Commission and the Commodity Futures Trading Commission, a member of the Financial Industry Regulatory Authority and a member of SIPC, with its principal place of business at 745 Seventh Avenue, New York, NY 10019.  On September 19, 2008, a liquidation proceeding under the Securities Investor Protection Act of 1970 (as amended, "SIPA") was commenced against LBI.  Pursuant to the court order commencing the SIPA proceeding (the

"SIPA Order"), James W. Giddens was appointed as the trustee (the "SIPA Trustee") to administer LBI's estate.

10.     Defendant LBSF is a Delaware corporation with offices in, among other places, New York.  Prior to filing the Chapter 11 case, LBSF engaged in worldwide trading activities, including the purchase and sale of foreign currencies.  On October 3, 2008, LBSF filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York.  LBSF's bankruptcy proceedings are jointly administered with *In re Lehman Brothers Holdings Inc.*, Index No. 08-13555 (JMP).

### Background Facts

11.     BNI and LBSF are parties to the FX Transaction, the terms of which are set forth in a Swift 300 Message from LBSF to BNI, dated September 12, 2008.

12.     Pursuant to the FX Transaction, LBSF and BNI agreed to exchange GBP 1,000,000 (the "BNI Funds"), to be delivered by BNI to LBSF, for US Dollars at the exchange rate of 1.7657, to be delivered by LBSF to BNI.

13.     The exchange contemplated by the FX Transaction was scheduled to occur on September 16, 2008 (the "Value Date").

14.     In connection with the FX Transaction, LBI was designated as receiving agent for LBSF.

15.     In connection with the FX Transaction, Lehman Brothers Commercial Corporation was designated as delivery agent for LBSF.

16.     In connection with the FX Transaction, JPMorgan Chase Bank, N.A. was designated as receiving agent for BNI.

17.    On September 15, 2008, at 1:09 am New York time, and 1:09 pm Indonesian time, BNI wired instructions to its correspondent bank in London, HSBC Bank, PLC ("HSBC"), for the delivery of GBP 1,000,000 to an account designated by LBSF (number 66427) in the name of LBI (the "Citibank Account") at Citibank, N.A. London, GB ("Citibank"). Tragically for BNI, later that same day, LBHI filed its bankruptcy proceeding, but BNI did not learn of that bankruptcy filing until after HSBC had carried out BNI's instructions.

18.    Thus, on September 16, 2008, the Value Date, pursuant to the FX Transaction, BNI caused the BNI Funds to be delivered to LBI's account at Citibank, London, and BNI, with no knowledge that the parent company of LBSF and LBI had made a bankruptcy filing, had every reason to believe and did believe, based upon the contractual undertakings of LBSF and the prior history of dealings between the parties, that LBSF would make the reciprocal deposit of USD 1,765,700 to BNI on that same day.

19.    Notwithstanding BNI's delivery of the BNI Funds to the Citibank Account, LBSF failed to deliver USD 1,765,700, or any part thereof, to BNI or to any agent or intermediary acting on behalf of BNI, as required by the terms of the FX Transaction.

20.    On September 18, 2008, two days after the Value Date and prior to the bankruptcy filing of LBSF, via Swift Message, BNI demanded in writing that LBSF return the BNI Funds to BNI.

21.    On September 19, 2008, three days after the Value Date, and prior to the bankruptcy filing of LBSF, via Swift Message, BNI demanded in writing that LBI send a debit authorization to Citibank so that Citibank would return the BNI Funds to BNI.

22.    On September 19, 2008, three days after the Value Date, and prior to the bankruptcy filing of LBSF, via Swift Message, BNI demanded in writing that LBSF direct LBI to return the BNI Funds to BNI.

23.    From and after September 16, 2008, the BNI Funds were held by LBI, as receiving agent, in the Citibank Account designated by LBSF for GBP transactions including, but not limited to, the period from September 16, 2008 to October 3, 2008, the date of LBSF's bankruptcy filing.

24.    Manifestly, LBI was not a party to the FX Transaction and, therefore, at no time acquired a legal or equitable interest in the BNI Funds. Similarly, because LBSF failed to deliver USD 1,765,700 to BNI on the Value Date of the FX Transaction, LBSF at no time acquired an equitable interest in the BNI Funds.

25.    Despite repeated demands made by BNI, as aforesaid, and subsequent additional demands made by BNI's counsel to counsel for LBSF and to counsel to the SIPA Trustee for LBI, neither LBSF nor LBI have returned the BNI Funds to BNI.

26.    On September 19, 2008, SIPC filed its complaint against LBI pursuant to SIPA, and on that same day the presiding Court entered the SIPA Order that, among other things, (i) ordered the appointment of the SIPA Trustee; (ii) ordered the SIPA Trustee to liquidate LBI with all of the duties and powers of a trustee under SIPA; and (iii) transferred jurisdiction over the SIPA liquidation of LBI to this Court (the "SIPA Proceeding").

27.    On October 3, 2008, LBSF filed a petition seeking relief under chapter 11 of the Bankruptcy Code.

28.    Upon information and belief, the BNI Funds continue to be held by LBI, in its capacity as receiving agent.

29.     As of the commencement of the SIPA Proceeding, LBI, which was acting in an

agent capacity in the FX Transaction and not as a principal, had no legal or equitable interest in

the BNI Funds.  Moreover, as of that same date (and approximately two weeks before LBSF's

bankruptcy filing), by reason of LBSF's failure to deliver USD 1,765,700 to BNI and BNI's

resulting demands upon LBI and LBSF for the return of the BNI Funds, LBSF had no legal or

equitable right to the BNI Funds.

30.     Remarkably, while repeatedly rejecting BNI's demands for the return of the BNI

Funds to BNI, as set forth above, it appears that LBI and LBSF have not been able to agree

between themselves as to which estate has the right to administer the BNI Funds.  This dispute

between the LBI and LBSF estates is probative of the fact that while both estates would be happy

to benefit from a windfall if allowed to retain the BNI Funds, neither estate can establish to the

other's satisfaction that it has a *bona fide* legal or equitable interest in the BNI Funds since those

funds belong to BNI.  In equity and good conscience, the BNI Funds <u>must</u> be returned to BNI.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment)**

31.     BNI repeats and realleges paragraphs 1 - 30 as if fully set forth herein.

32.     LBI is not a counterparty to the FX Transaction.

33.     LBI's only relation to the FX Transaction was to function as the receiving agent

for LBSF.

34.     As an agent, LBI holds no beneficial or equitable interest in the BNI Funds.

35.     Prior to the commencement of the SIPA Proceeding, and as a result of LBSF's

failure to complete the FX Transaction, BNI demanded return of the BNI Funds from LBI.

36.     Prior to commencement of LBSF's chapter 11 case, and as a result of LBSF's

failure to complete the FX Transaction, BNI demanded the return of the BNI Funds from LBSF.

37.     Prior to commencement of LBSF's chapter 11 case, and as a result of LBSF's failure to complete the FX Transaction, BNI demanded that LBSF instruct LBI to return the BNI Funds to BNI.

38.     Despite the numerous due demands of BNI and its counsel, as set forth above, LBSF has not returned the BNI Funds to BNI nor, upon information and belief, has LBSF instructed LBI to return the BNI Funds to BNI, and LBI has refused, and continues to refuse, to return the BNI Funds to BNI.

39.     The transfer by BNI contemplated simultaneous exchanges of currencies and was manifestly made in reliance upon such promise. LBI has not delivered the BNI Funds to LBSF in order to effectuate the settlement of the FX Transaction.

40.     The BNI Funds are not property of the estate of LBI under and pursuant to § 541 of the Bankruptcy Code, made applicable to these proceedings pursuant to SIPA § 78fff(b).

41.     The BNI Funds are not property of the estate of LBSF under and pursuant to § 541 of the Bankruptcy Code.

42.     A substantial and actual controversy exists between BNI and the Defendants as to BNI's right to return of the BNI Funds.

43.     A declaration of the rights and legal relations of the parties with respect to the BNI Funds is required to clarify and resolve the legal issues involved and, in particular, to confirm that BNI is entitled to return of the BNI Funds.

44.     Resolution of this issue will provide certainty to the parties to this Adversary Proceeding and to others as the Defendants liquidate.

45.     Pursuant to 28 U.S.C. § 2201 and Fed. R. Bankr. P. 7001, this Court should issue judgment declaring that the BNI Funds are not property of the estate of LBI or property of the

estate of LBSF, and that BNI is accordingly entitled to return of the BNI Funds; and granting such other and further relief as may be necessary to enforce BNI's ownership rights in the BNI Funds.

## SECOND CLAIM FOR RELIEF
### (Constructive Trust)

46.     BNI repeats and incorporates the allegations in paragraphs 1 through 45 as if set forth fully herein.  LBSF, pursuant to the FX transaction, entered into a contractual arrangement with BNI for the sale by BNI of GBP 1,000,000.

47.     In reliance upon the contractual undertakings made by BNI in connection with the FX transaction and upon the history of similar undertakings made and performed by LBSF time and again in connection with the hundreds of prior FX transactions between LBSF and BNI which had been settled by LBSF over the course of the prior year and a half, BNI transferred the GBP 1,000,000 to the Citibank Account.

48.     Due to LBSF's default under the FX Transaction (which occurred prior to LBSF's bankruptcy filing) LBSF never became entitled to receive the BNI Funds.

49.     Defendants have refused to return the BNI Funds to BNI and as a result have been unjustly enriched by the receipt and continued retention of the BNI Funds.

50.     The BNI Funds, which are owned by and owed to BNI, are thus held by Defendants in constructive trust for BNI.  Equity and good conscience dictate that neither LBI nor LBSF should be permitted to keep the BNI Funds.

51.     BNI is entitled to an order requiring Defendants to account for all funds so held in constructive trust, and to return such funds to BNI.

## THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

52.     BNI repeats and incorporates the allegations in paragraphs 1 through 51 as if set forth fully herein.

53.     As set forth above, each of the Defendants is either the recipient of and/or has refused to cause the return of, the BNI Funds to BNI.  The receipt of the BNI Funds by Defendants without the performance of the promised exchange, will, if permitted to exist, unjustly enrich the Defendants.

54.     Neither LBSF nor LBI has any legal or equitable right, title, or interest in the BNI Funds.

55.     Despite due demand by BNI for an immediate return of the BNI Funds, Defendants unlawfully and improperly continue to withhold the return of the BNI Funds to BNI.

56.     Neither LBSF nor LBI has relied to its detriment on receipt of the BNI Funds.

57.     As a result of Defendants' failure to immediately return to BNI the BNI Funds, which are the sole and absolute property of BNI, Defendants have been unjustly enriched.  In equity and good conscience, the BNI Funds should be returned to BNI, together with any and all sums earned on the BNI Funds.

## FOURTH CLAIM FOR RELIEF
### (Reclamation)

58.     BNI repeats and realleges paragraphs 1 through 57 as if fully set forth herein.

59.     Under applicable non-bankruptcy law, including the New York Uniform Commercial Code (the "NYUCC") and relevant case law, where funds are delivered pursuant to a foreign currency exchange transaction, such as the FX Transaction, the funds constitute a commodity and not a form of payment, and therefore constitute "goods" as that term is used in section 2-105 of the NYUCC.  Therefore, the BNI Funds delivered pursuant to the FX

Transaction, constitute goods rather than a form of payment, and accordingly, BNI has state law rights of reclamation under the NYUCC.

60.    BNI made demand for return of the BNI Funds within 10 days after the receipt of the BNI Funds by LBSF as required by Section 2-702(2) of the NYUCC and is entitled to reclaim the GBP 1,000,000 under the NYUCC.

61.    BNI's rights of reclamation are also protected under Section 546(c) of the Bankruptcy Code.

62.    On September 16, 2008, LBSF received the BNI Funds upon BNI's delivery thereof to LBI, in its capacity as receiving agent for LBSF.  The BNI Funds constitute goods sold by BNI to LBSF in the ordinary course of BNI's business, received by LBSF while LSBF was insolvent and received by LSBF within 45 days before the date of commencement of LBSF's chapter 11 case.

63.    BNI demanded reclamation of the BNI Funds in writing not later than 45 days after LBSF's receipt of the BNI Funds, and not later than 20 days after the date of the commencement of LSBF's chapter 11 case.

64.    BNI is, therefore, entitled to the return of the BNI Funds, together with applicable interest, or in lieu thereof, an administrative expense claim against LBSF in the amount of USD 1,765,700, together with applicable interest.

**FIFTH CLAIM FOR RELIEF**
**(11 U.S.C. §503(b)(9) Claim)**

65.    BNI repeats and realleges paragraphs 1 through 64 as if fully set forth herein.

66.    The BNI Funds constitute goods sold to LBSF upon delivery thereof to LBI in the ordinary course of LBSF's business.

67. On September 16, 2008, within 20 days before the date of commencement of LBSF's chapter 11 case on October 3, 2008, the BNI Funds were received by LBSF upon delivery to LBI, its receiving agent.

68. Accordingly, pursuant to 11 U.S.C. §503(b)(9), BNI is entitled to an allowed administrative expense claim against LBSF for the value of such goods. The value of such goods was established by the agreement of the parties to the FX Transaction as the sum of USD 1,765,700.

### SIXTH CLAIM FOR RELIEF
### (Relief from the Automatic Stay)

69. BNI repeats and realleges paragraphs 1 - 68 as if fully set forth herein.

70. The BNI Funds do not constitute property of the Defendants' estates pursuant to 11 U.S.C. § 541 (which is made applicable to the SIPA Proceeding pursuant to SIPA § 78fff(b)) and, therefore, the relief sought herein is not subject to the stay as provided in 11 U.S.C. § 362(a) or as set forth in the SIPA Order.

71. Nonetheless, out of an abundance of caution, BNI seeks relief from the stay to the extent necessary to pursue the relief requested in this Complaint and to obtain possession of the BNI Funds.

72. Because the BNI Funds belong to BNI and do not constitute property of the Defendants' estates, cause exists for relief from the stay to the extent such relief is required.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff BNI prays for relief and respectfully requests that the Court enter judgment in its favor as follows:

a. Entering a declaratory judgment finding that the BNI Funds are not property of the LBSF estate or the LBI estate and that BNI retains all title thereto;

b.      Impressing a constructive trust on all of the BNI Funds and requiring Defendants to account for such funds;

c.      Ordering Defendants to return the BNI Funds to BNI;

e.      Granting an award of reclamation to BNI for the recovery of the BNI Funds in an amount not less than USD 1,765,700, with interest thereon, or in lieu thereof, granting to BNI an administrative expense claim against the LBSF estate for said amount;

f.      Granting BNI an administrative expense claim against the LBSF estate in the amount of USD 1,765,700, with interest thereon, pursuant to 11 U.S.C. § 503(b)(9);

g.      Awarding pre-judgment and post-judgment interest at the maximum lawful rate; and

h.      Granting BNI such other and further relief as the Court may deem just and proper.

Dated:    September 21, 2009

TROUTMAN SANDERS LLP

*/s/ Hollace T. Cohen*
Hollace T. Cohen, Esq.
Lee W. Stremba, Esq.
Brett D. Goodman, Esq.
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 704-6000
Facsimile: (212) 704-6288

*Attorneys for PT Bank Negara Indonesia (Persero) Tbk*